**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ROBERT KATSNELSON,

                Plaintiff,

       v.

THE METROPOLITAN TRANSPORTATION
AUTHORITY, THE LONG ISLAND RAILROAD
COMPANY, THE NEW YORK CITY TRANSIT
AUTHORITY, and THE STATEN ISLAND
RAPID TRANSIT OPERATING AUTHORITY,

                Defendants.

Case No.: 19-3699

**COMPLAINT**

**JURY TRIAL DEMANDED**

<u>**COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

Plaintiff Robert Katsnelson, ("Plaintiff" or "Katsnelson") by and through his attorneys, Danny Grace, P.C., as and for his Complaint in this action against Defendants the Metropolitan Transportation Authority ("MTA"), the Long Island Rail Road Company ("LIRR"), the New York City Transit Authority ("NYCTA"), and the Staten Island Rapid Transit Operating Authority ("SIRTOA") , (Individual Defendants collectively known as "Defendants") alleges upon personal knowledge and upon information and belief as to the matters as follows:

<u>**NATURE OF THE CLAIMS**</u>

1.      This is an action for declaratory, injunctive, equitable relief, as well as monetary damages to redress Defendants' unlawful employment practices against Plaintiff, including discriminatory and retaliatory treatment of Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e et. Seq. ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. §§1981a et. Seq. ("Section 1981"), The New York State Human Rights Law, New York Executive Law §§ 290 et. Seq. ("NYSHRL"); and The New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq. ("NYCHRL").

2.      Defendants, its owners, managers, and employees decided, unlawfully and recklessly, to treat Plaintiff in a derogatory manner based on his religion and race. After he complained about such unlawful treatment, Defendants retaliated and terminated Plaintiff without any other cause.

3.      Defendants' conduct was knowing, malicious, willful and wanton and showed a reckless disregard for Plaintiff, which has caused and continues to cause economical and non-economic damages, and severe mental anguish and distress.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under Title VII pursuant to 42 U.S.C. §§ 2000e et. Seq., and Section 1981 pursuant to 42 U.S.C. §§1981a et. Seq.

5.      This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367 (a).

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in the United States District Court, Eastern District of New York, pursuant to 28 U.S.C. § 1391, because Defendants were incorporated, located, and conducted business in this district and because a substantial part of the events or omissions giving rise to this action occurred in this district.

## PROCEDURAL REQUIREMENTS

8.      Prior to the commencement of this action, Plaintiff filed a verified complaint to the New York State Division of Human Rights ("NYSDHR") on September 24, 2018, charging

Defendant with unlawful discrimination in relation to Plaintiff's employment and arising out of the same facts alleged herein.

9.      This complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's EEOC charge arises out of the same facts alleged herein.

10.     Plaintiff received a Right to Sue letter from the EEOC on or around May 23, 2019.

11.     This Complaint has been filed within 90 days of Plaintiff's receipt of Right to Sue letter.

12.     Contemporaneous with the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of §§ 8-502 of the New York City Administrative Code.

13.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

14.     Plaintiff is a Jewish former employee of LIRR and resides in, as well as is a citizen of, the State of New York.

15.     From May 17, 2017, until his unlawful termination on June 28, 2018, he was employed as a Ticket Clerk by LIRR in various locations in New York, chiefly in the Eastern District of New York.

16.     At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

17.     Defendant MTA is a public benefit organized and existing by virtue of the laws, statutes and charters of the State of New York, and is the owner and operator of Defendants LIRR, NYCTA, and SIRTOA.

18.     Defendants LIRR, NYCTA and SIRTOA are publicly owned by Defendant MTA, that transfers funds back and forth to LIRR, NYCTA and SIRTOA, shares common office space with LIRR, NYCTA and SIRTOA and there is an overlap of ownership and personnel.

19.     Defendant LIRR is a commuter rail system in the southeastern part of New York State and was Plaintiff's direct employer at all relevant times herein prior to Plaintiff's termination.

20.     Defendant NYCTA is an agency of the MTA, operates public transportation in New York City, including the New York City Subway system, Staten Island Railway system, and New York City Bus system and following his unlawful termination by LIRR, Plaintiff was denied employment therein.

21.     Defendant SIRTOA, a subsidiary of Defendant NYCTA, operates the Staten Island Railway, which is the only rapid transit line in the New York City borough of Staten Island, and following his unlawful termination by LIRR, Plaintiff was denied employment therein..

22.     At all relevant times, Defendants have met the definition of an "employer" under all applicable statutes.

**FACTUAL ALLEGATIONS**

23.     Plaintiff was hired by LIRR as a Ticket Clerk from May 17, 2017 to September 6, 2017, initially during the summer period.

24.     As a result of Plaintiff's exemplary performance, Plaintiff was rehired full-time as a Ticket Clerk on September 20, 2017.

25.     Throughout his employment, Plaintiff held an exemplary record of employment and did not receive any negative performance evaluations, either written or oral.

26. Prior to the events described herein and the protected complaints made by Plaintiff, Plaintiff was never disciplined, placed on any performance improvement plans, suspended, or counseled about his work performance.

27. As a Ticket Clerk, Plaintiff was responsible for selling tickets at any one of Defendants' locations, providing customer service, and bussing/field support job programs as required.

28. His selling performance was reflected in the end-of-day sales records for Ticket Office Machines ("TOM") which would show the quantity and dollar value of tickets sold.

29. Duties that were not reflected in the TOMs were: (1) routine maintenance of TOMs that malfunction and requires servicing, rebooting TOMs that freeze or malfunction; (2) restocking Ticket Office Machines; (3) assisting disabled or elderly customers to elevators, platforms, and other designated waiting areas; and (4) responding to customers questions about navigating throughout the LIRR and MTA system, places of interest in New York City, and transportation to airports, hotels, and other destinations (5) other duties assigned by managers, agents and chief ticket sellers.

30. Furthermore, Plaintiff was an unassigned Ticket Clerk; meaning that he did not have a dedicated work location, ticket window, or cashbox. Consequently, upon arriving to his work location every day, he needed to be issued his keys, cashbox, and other work supplies; all of which would take some time.

31. Plaintiff must then verify the contents of his cashbox, print test tickets, replace the paper stock if necessary and other several related tasks. Moreover, due to lack of a dedicated work location, Plaintiff was more often assigned to ticket windows with ticket machines that were more likely to require maintenance at the start of his shift or during his shift.

32.     All Ticket Clerks, including Plaintiff, received training and notification of current or planned LIRR system maintenance projects, customer service issues, bussing programs, security concerns, and other station occurrences that often occurred directly before or after meal and/or other break periods.

33.     TOMs records could only reflect Plaintiff's partial working times, while actually selling tickets, rather than the whole working times on site.

34.     During the course of his employment, Plaintiff came into regular contact with a fellow LIRR Ticket Clerk named Ms. Henrietta Turner ("Turner").

35.     Turner would often make disparaging remarks about Jewish customers, including, but not limited to: (1) "I live next to some of those smelly Jews and I worked with them, so I know how they are;" (2) "You know how Jews are cheap, they do not want to pay you;" (3) "Jews are always trying to get over on you" (a reference to an adult customer trying to purchase a child's ticket); and (4) "these Jews are so stingy.", knowing full well that Plaintiff held that race, ethnicity and faith.

36.     Plaintiff repeatedly objected to Turner's comments when she made them, including two complaints to Turner in early May 2018. Plaintiff repeatedly requested that she stop making such discriminatory comments.

**Plaintiff's Protected Activity**

37.     On May 17, 2018, Plaintiff reported to work and punched-in at Atlantic Terminal, Brooklyn, on Defendants' time and attendance system at or around 2:00 p.m. for his 2:30 p.m. shift.

38.     When Plaintiff walked into the Ticket Office, Plaintiff greeted Turner and requested the keys to his cashbox compartment to prepare for his shift. Turner refused to deliver the keys, alleged that it was "too early" and asked Plaintiff to "come back at 2:30 p.m."

39.     Plaintiff, a diligent worker, wanted to ensure that he could get the keys in order to start his shift on time. He asked Turner whether the chief left her keys to give to him. Turner responded that "If I was the chief, you would not be working here."

40.     To avoid escalating the disputes, Plaintiff walked away from this clear provocation and returned at 2:20 p.m. Plaintiff requested the keys again and explained that he must verify and recount the contents of his cashbox before the start of his shift and prepare all documents needed per LIRR's policy.

41.     After hearing this, Turner became angry and yelled at Plaintiff, "No. You start at 2:30. What's wrong with you people" (Plaintiff understood, contextually, that "you people" referred to the Jewish people).

42.     Turner refused to give Plaintiff the keys to the cashbox and safe compartment until 2:30 p.m. As a result, it was impossible for Plaintiff to start his 2:30 p.m. shift exactly at 2:30 p.m. even though he arrived in the booth at 2:00 p.m.

43.     Plaintiff reasonably believed that Turner's refusal to deliver him the keys on time was to retaliate against Plaintiff's request for her to stop making disparaging and antisemitic comments against Jewish people, including Plaintiff himself.

44.     On the same day, in an attempt to prevent Turner from making further antisemitic comments and conduct any other retaliatory activities, Plaintiff reported Turner's retaliatory refusal to deliver him the keys to Mr. Tony Manzon ("Manzon"), as well as Turner's most recent and previous anti-Semitic and racist comments against Jewish people.

45. Manzon then asked Plaintiff whether he would like to make a formal complaint. When Plaintiff demonstrated yes, Manzon discouraged Plaintiff from doing so and said, "I do not recommend it. You are still on probation, and you do not want to be the topic of discussion in our manager meetings."

46. Manzon told Plaintiff that he would investigate the matter and talk to the witnesses regarding Turner's conduct, and then would speak to Turner personally. Thus, Plaintiff was discouraged from making a formal complaint beyond Manzon.

47. Plaintiff was never informed if Manzon spoke to Turner.

48. On June 7, 2018, Plaintiff followed up his complaint about Turner's discriminatory and retaliatory activities against him based on his religion and race with Manzon. Manzon responded that that he had received conflicting information, and, therefore, no further action was taken.

49. Furthermore, Manzon informed Plaintiff that he should raise any future complaint to the Atlantic Avenue Chief Ticket Seller(s) rather than him. This made any further complaint harder, if not impossible, because while Plaintiff generally worked from 2:30 p.m. to 10:30 p.m., those chief sellers work from 6:00 a.m. to 2:00 p.m. Nonetheless, Plaintiff had already made his complaint to Manzon, and Defendants were thus aware.

50. On June 15, 2018, after returning from a break, Plaintiff was informed that his superiors were looking for him and considered him absent from his workspace. When Plaintiff explained that he was on his lunch break, as was allowed for over a year of employment thus far, Plaintiff was informed of a previously unreported policy that all Ticket Clerks must report to his/her supervisors, immediately before he/she takes a break.

51.     Pursuant to Defendants' purported policy for probationary employees, LIRR was required to conduct a three-month review and six-month review into an employee's performance, and deliver the results to the employee. To the extent that Plaintiff underwent these reviews, Defendants failed to provide a copy of these performance reviews for Plaintiff's attention.

52.     In fact, Plaintiff was sent a version of his performance review results for the first time only after being unlawfully terminated by Defendants due to his protected activities.

**Unlawful Termination**

53.     On June 28, 2018, Plaintiff was called into a meeting with John Persico, Terminal Manager for Jamaica Station, and Theresa Dorsey, Director of Stations Support at Atlantic Terminal. During the meeting, Defendants terminated Plaintiff without forewarning, alleging that they received a complaint from a manager that Plaintiff did not start his shift on time.

54.     Plaintiff told Defendants that the alleged claims could be disapproved by time and attendance records as well as TOM records. Plaintiff also requested Ms. Dorsey to review these records. Nonetheless, Ms. Dorsey responded that they do not have to check those records and she had to terminate him.

55.     Plaintiff contends that prior to his complaints to Defendants of unlawful discrimination based on his religion and race that he suffered at the hands of a fellow employee; Plaintiff's employment performance was unblemished.

56.     Upon making this complaint to his supervisor, Plaintiff suddenly began to experience adverse employment conditions and attitudes, eventually culminating in his termination without forewarning.

57.     This termination was unlawful and grounded in discrimination, and retaliation based on his protected complaints.

**Further Retaliation Against Plaintiff**

58.     Plaintiff had previously applied for the position of Conductor with NYCTA.

59.     Per NYCTA's request, Plaintiff took his pre-employment test on April 9, 2016, prior to gaining employment with LIRR. Following the test, he then appeared for pre-employment processing on July 13, 2018, after his unlawful termination by LIRR.

60.     Upon discovering that Plaintiff had made protected complaints in the past and was terminated unlawfully as a result, NYCTA disregarded Plaintiff's application for employment.

61.     Plaintiff also applied for the position of Train Operator with NYCTA and per NYCTA's request, appeared for pre-employment processing on July 6, 2018 and November 5, 2018.

62.     Again, his application was denied due to his protected activities.

63.     Plaintiff applied for the position of Conductor with SIRTOA and attended an interview on April 10, 2019.

64.     After appearing for pre-processing on May 3, 2019, Plaintiff was hired as an SIRTOA Conductor and received a reporting slip notice on May 16, 2019.

65.     Four days later, Plaintiff reported for an employee ID photo, and then was congratulated for receiving the job.

66.      However, upon discovering that Plaintiff had made protected complaints in the past and was terminated unlawfully as a result, SIRTOA disregarded Plaintiff's application for employment.

67.     Specifically, Plaintiff received an email from MTA/NYCT Human Resources Certification Unit on May 20, 2019, with the heading "NYCT/SIRTOA" stating, in part, "Please do not report to the location indicated on the reporting slip in June 3, 2019 as previously indicated".

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of Title VII - Religion)
### (Defendants MTA and LIRR)

68. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

69. Defendant MTA and Defendant LIRR discriminated against Plaintiff on the basis of his religion by, inter alia, terminating Plaintiff's employment due to his religion.

70. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

71. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief;

72. Defendants' unlawful and discriminatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Discrimination in Violation of Title VII - Race)
### (Defendants MTA and LIRR)

73. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

74. Defendant MTA and Defendant LIRR discriminated against Plaintiff on the basis of his race by, inter alia, terminating Plaintiff employment due to his race.

75.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

76.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief;

Defendants' unlawful and discriminatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### THIRD CAUSE OF ACTION
**(Discrimination in Violation of Section 1981)**
**(Defendants MTA and LIRR)**

77.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

78.     Under Section 1981, all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens.

79.     The term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, including an employment one.

80.     Defendant MTA and Defendant LIRR discriminated against Plaintiff on the basis of his race by, inter alia, terminating Plaintiff employment due to his race and due to his complaints of discrimination.

81.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

82.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief;

83.     Defendants' unlawful and discriminatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### FOURTH CAUSE OF ACTION
**(Retaliation in Violation of Title VII - Religion)**
**(Defendants MTA and LIRR)**

84.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

85.     Complaining to the Defendant MTA, Defendant LIRR, his supervisors, and managers about the discriminatory comments based on religion constituted protected activities as defined in Title VII.

86.     Defendant MTA and Defendant LIRR retaliated against Plaintiff in violation of Title VII, for opposing Defendants' discriminatory conduct and complaining about Turner's discriminatory comments to Manzon.

87.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

88.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

89.     Defendants' unlawful and retaliatory conduction in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII - Race)
### (Defendants MTA and LIRR)

90.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

91.     Complaining to the Defendant MTA, Defendant LIRR, his supervisors, and managers about the discriminatory comments based on race constituted protected activities as defined in Title VII.

92. Defendant MTA and Defendant LIRR retaliated against Plaintiff in violation of Title VII for opposing Defendants' discriminatory conduct and complaining about Turner's discriminatory comments to Manzon.

93. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

94. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

95. Defendants' unlawful and retaliatory conduction in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII - Religion)
### (Defendants MTA, NYCTA and LIRR)

96. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

97. Defendants MTA, NYCTA and SIRTOA retaliated against Plaintiff by rejecting all of his applications for different positions because of his prior protected activities.

98. Defendants MTA, and SIRTOA actually rescinded an offer that Plaintiff had accepted, even though Plaintiff was preparing to begin employment per SIRTOA's request.

99.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

100.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

101.     Defendants' unlawful and retaliatory conduction in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII - Race)
### (Defendants MTA, NYCTA and SIRTOA)

102.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

103.     Defendants MTA, NYCTA and SIRTOA retaliated against Plaintiff by rejecting all of his applications for different positions because of his prior protected activities.

104.     Defendants MTA, and SIRTOA actually rescinded an offer that Plaintiff had accepted, even though Plaintiff was preparing to begin employment per SIRTOA's request.

105.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic

damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

106.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

107.     Defendants' unlawful and retaliatory conduction in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## EIGHTH CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL - Religion)
### (Defendants MTA and LIRR)

108.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

109.     Defendant MTA and Defendant LIRR discriminated against Plaintiff on the basis of his religion by, inter alia, terminating Plaintiff.

110.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.

111.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental and anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

112.     Defendants' unlawful and discriminatory conduct in violation of the NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## NINTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL - Religion)
### (All Defendants)

113.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

114.     Complaining to the Defendant MTA, Defendant LIRR, his supervisors, and managers about the discriminatory comments based on religion constitute protected activities as defined in the NYSHRL.

115.     Defendant MTA and Defendant LIRR retaliated against Plaintiff in violation of the NYSHRL by, *inter alia*, terminating Plaintiff because of his protected activities.

116.     Defendants MTA, NYCTA and SIRTOA retaliated against Plaintiff by rejecting all of his applications for different positions because of his prior protected activities.

117.     Defendants MTA, and SIRTOA actually rescinded an offer that Plaintiff had accepted, even though Plaintiff was preparing to begin employment per SIRTOA's request.

118.     As a direct and proximate results of Defendants' unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an wared of monetary damages.

119.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotion distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical illness and injury, for which she is entitled to an wared to monetary damages and other relief.

120.     Defendants' unlawful and retaliatory conduct in violation of the NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TENTH CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL - Race)
### (Defendants MTA and LIRR)

121.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

122.     Defendant MTA and Defendant LIRR discriminated against Plaintiff on the basis of his race by, inter alia, terminating Plaintiff.

123.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.

124.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental and anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

125. Defendants' unlawful and discriminatory conduct in violation of the NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**ELEVENTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYSHRL - Race)**
**(All Defendants)**

126. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

127. Complaining to the Defendant MTA, Defendant LIRR, his supervisors, and managers about the discriminatory comments based on race constitute protected activities as defined in the NYSHRL.

128. Defendant MTA and Defendant LIRR retaliated against Plaintiff in violation of the NYSHRL by, *inter alia*, terminating Plaintiff because of his protected activities.

129. Defendants MTA, NYCTA and SIRTOA retaliated against Plaintiff by rejecting all of his applications for different positions because of his prior protected activities.

130. Defendants MTA, and SIRTOA actually rescinded an offer that Plaintiff had accepted, even though Plaintiff was preparing to begin employment per SIRTOA's request.

131. As a direct and proximate results of Defendants' unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an wared of monetary damages.

132. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotion distress, including, but not limited to, depression, humiliation, embarrassment, stress and

anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical illness and injury, for which she is entitled to an wared to monetary damages and other relief.

133.    Defendants' unlawful and retaliatory conduct in violation of the NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**TWELFTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYCHRL - Race)**
**(Defendants MTA and LIRR)**

134.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

135.    Defendant MTA and Defendant LIRR discriminated against Plaintiff on the basis of his race by, inter alia, terminating Plaintiff.

136.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.

137.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer severe mental and anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

138.    Defendants' unlawful and discriminatory conduct in violation of the NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## THIRTEENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL - Race)
### (All Defendants)

139.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

140.     Complaining to the Defendant MTA, Defendant LIRR, his supervisors, and managers about the discriminatory comments based on race constitute protected activities as defined in the NYCHRL.

141.     Defendant MTA and Defendant LIRR retaliated against Plaintiff in violation of the NYCHRL by, *inter alia*, terminating Plaintiff because of his protected activities.

142.     Defendants MTA, NYCTA and SIRTOA retaliated against Plaintiff by rejecting all of his applications for different positions because of his prior protected activities.

143.     Defendants MTA, and SIRTOA actually rescinded an offer that Plaintiff had accepted, even though Plaintiff was preparing to begin employment per SIRTOA's request.

144.     As a direct and proximate results of Defendants' unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an wared of monetary damages.

145.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotion distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical illness and injury, for which she is entitled to an wared to monetary damages and other relief.

146.     Defendants' unlawful and retaliatory conduct in violation of the NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A.     A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the Title VII, Section 1981, NYSHRL, and NYCHRL;

B.     An order directing Defendants to place Plaintiff in the position he would have occupied but for Defendants' discriminatory and/or otherwise unlawful conduct, as well as to take such affirmative action, including reinstatement, as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff.

C.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to the loss of pass and future income, wages, compensation, job security and other benefits of employment;

D.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem self-confidence and personal dignity, emotional pain and suffering and any other physical or mental injuries;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

F. An award of punitive damages, pursuant to NYSHRL and NYCHRL, in an amount to be determined at trial;

G. An award of damages for any and all other monetary and/or non-monetary damages losses suffered by Plaintiff an amount to be determined at trial, plus prejudgment interest;

H. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by laws; and

I. Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.


Dated: June 25, 2019
     New York, New York                       Respectfully submitted,

                                          DANNY GRACE, P.C.
                                          *ATTORNEYS FOR PLAINTIFF*

                                          222 BROADWAY, 19TH FLOOR
                                          NEW YORK, NY 10038
                                          (646) 515-2821


                                        _____/S/_____
                                          DANIEL GRACE